Team 7069, Easter v. Cramer. Mr. Mann? Yes, Your Honor. Your Honor, if it pleases the Court, my name is Richard Mann. I represent Game Warden Jared Cramer in this Qualified Immunity Appeal from the Eastern District of Oklahoma. This is a prime case for appeal on Qualified Immunity to this Court because there are no other reported cases whatsoever that we could find in the United States federal system, including the United States Supreme Court, where an officer is attempting to arrest an individual and ends up in a body of water, a pond in this case, with that individual at least sitting somewhat on his chest with the game warden's head underwater. No cases of materially similar conduct or obvious clarity apply in this situation. As the Court will recall from the briefs in this case, the facts briefly are... Before you get into that, there are plenty of cases about the use of excessive force in a situation where a reasonable officer would not have perceived a serious threat of death or bodily injury. Finding the case that clearly establishes the law, it's not a scavenger hunt. I mean, you do have to have reasonable actual similarity, but here the allegation is that a reasonable officer would not have perceived himself to be in risk of death or serious bodily injury, or at least there's a fact question there. And I guess maybe since you wanted to get into the facts, why wasn't the district court correct that there's a fact question there because we don't yet know whether Mr. Kramer should have been threatened by Easter's conduct? Well, the case law in that particular point is that you look at the perspective of the officer on the location during the circumstances. You don't go look at 20-20 hindsight and what he may or may not have done with you so far so good. Yes, sir. But the bottom line is, ultimately, is that the United States Supreme Court has said if the court is presented with a unique set of facts and circumstances, and that's why we ask this court to take the plainest version of this is true, that it is a qualified immunity question that if the district court does not pursue it, this court should. Right. But we have the Larson case from 10 years ago or so. Larson. And it talks, you know, it's a case where the police shot an individual, and in that case we looked at whether a warning had been given, how close they were, the nature of the underlying offense, you know, contextual. And I know you want to get into the specific facts, but do we know how close the two were from each other before the shots were fired? Do we know whether Mr. Easter was attempting to, you know, flee? Was his back to the officer? How do we assess the relative threat on this record? I'm sorry, I didn't catch the last part. How do we assess the relative threat on this record? I think you look at the relative threat by what happened when the officer first tried to handcuff Mr. Patrick. He ran, and the officer tackled him and ended up in the pond with Mr. Easter, or excuse me, Billy Patrick, the decedent, on his chest. So there is a threat and a danger there. I think the case law supports that. At that point, I'm with you at that point, but at the time the shots were fired, don't we have to decide if there was still, you know, an ongoing serious threat? And why isn't that a fact question? You're stuck here with their allegations, you know, construed in the light most favorable to them. And why can't you construe these facts as alleged, haven't been proven yet, as disputing that a reasonable officer would have felt threatened? At the time the shots were fired? At the time the shots were fired. Yes, sir. I think if you take the plainest version as true, which we're obligated to do in this instance, the witness, the girlfriend of the decedent, Billy Patrick, her testimony is that she sees the officer stand up from the pond. Billy Patrick is trying to get away from him. I think this is to answer your question about how closely they were, and that he is either pushed away or is falling away when the officer shoots him two times. So it's a matter of, I think even under their best version, it's a matter of feet at most. Just two to three feet, several feet. What was the distance that the forensic evidence showed that he was shot in the side? In the side. And how far apart, if you could interpret the forensic report, how far apart were they? Not much. I think one was low on the side and the other one was, I don't think it was to the armpit, is my recollection. I think he's getting at how far apart were Mr. Patrick and the officer. Again, I don't think it's more than, their version is, would not be more than a couple of feet. One of their versions is, though, is that Mr., and I don't think that Ms. King testified about this. I think this was developed on their briefing, is that the, I think they would say it's more than that, going off their version, is that Mr. Patrick might very well be laying on the ground like this when the game warden stands up and shoots him in the side. Why don't we accept that and have a trial? Well, because the second prong of the use of force scenario is the individual, under the United States Supreme Court and constitutional analysis on this point, is that an officer can use deadly force to defend himself, or if there's an ongoing threat or danger to others in the immediate vicinity, the officer can use deadly force to prevent someone, a fleeing felon, from getting away from them and being a threat to those other individuals. And it is undisputed that Lindy King, who rode from the other side of the pond, back to where this is happening, was in the presence of another game warden named Cody Youngblood, and is rolling up onto the scene. That's how she gets there, to claim that she sees what she sees. And then there's another gentleman named Carl Locke, who is a friend of Mr. Patrick and Lindy King, standing literally just there, right at the end of his truck, watching this happen right in front of him. Was there any evidence that he had the capacity to do them any harm with anything other than his hands? Well, if you consider, as game wardens do or should, that water itself is a weapon, such as it was in this case where Mr. No, no, no. I'm referring now to what seems to be your argument about the danger to others, as opposed to the officer who did the shooting. There is information in the record that Mr. Patrick was not going to go willingly. That is not what anything that the officer knew at that point in time. So there is no evidence whatsoever that Mr. Patrick had any weapons with him at the time that the officer shoots. He is, under our scenario, there would be a struggle near the water. Under their scenario, which we're working off of, is that he has no weapons. Well, then doesn't that just put us back where the only real issue in this case is the danger to the shooting officer, not the danger to the other people who are around? I don't think so. There is a case out of this circuit called Blossom v. Yarbrough, and it's cited in perhaps both our briefs, that says the lack of a weapon is not outcome determinative of whether an officer could reasonably believe that there was a threat to himself or others. And I believe in that case the individual had fled the officer and did not have a weapon and was shot as the officer pursued him. But that was this circuit saying that a reasonable officer could believe that there is still a threat and a danger, even though the individual does not have a weapon in his hands at the time. Would there still be a threat here, hypothetically, if Mr. Patrick, at the time of the shooting, was, say, a dozen feet away from the officer and fleeing? Would there still be a threat? Yeah. I think there might even be a better argument that there is more of a threat because he would be approaching where the other game warden is at and Lindy King. So I think one of the things the courts can take into consideration in qualified immunity cases why officers pursue them in the first place is so they can't go take hostages and so they can't go get weapons. So, yes, I don't think it lowers the risk. I think it might, if anything, enhance the risk of a continuing danger to individuals. What was the underlying felony arrest warrant for? What was the underlying crime that was alleged? He was on parole violation from Arkansas. Did Kramer know that? No, Your Honor. The evidence is that he did not, neither he nor game warden Cody Youngblood knew the- So we shouldn't consider that fact one way or the other? That there's clear that Kramer and Youngblood knew there was a warrant for his arrest. That's what Young or Kramer was trying to arrest him for. And that of the radio traffic, and that's undisputed, that the state of Arkansas had told them that they would extradite on Patrick, but then there was also a warrant for Lindy King, but they would not extradite on her. The arrest itself or the attempted arrest is not challenged. The existence of the warrant is not challenged. Being in the water with Mr. Patrick on top of him, at least for a short period of time, as they would like to call it a baptism, is not disputed in the record either. I think that's unquestionable that he was at least in the water for some period of time. I think they'll say- Was Patrick shot in the water? No, Your Honor. He was not shot in the water. There's a question, and I think that is a disputed area that we're getting into, is what kind of struggles in the water and if they're separated and he's on land. There had been a struggle in the water. That's not disputed, is it? I think there is a struggle in the water. I think that is not reasonable. Not what you think, but what do they think? I think they're going to say that they wrestle on the- Kramer tackles him, they roll down into the pond, and it's unintentional that Patrick is on top of Kramer and he's pushing him down to get away from him. I think Carl Locke says that, and he's standing right there watching all of it. And so it's a question of whether or not the game warden thinks there's a struggle or Carl Locke thinks there's a struggle, but he gets off of him at some point in time and then there's a question, is Billy Patrick still in the water? This is a disputed area, I think. Were Patrick still in the water or if he's on dry land, but still pretty close to Kramer? And what do they say? He was on land or in the water? I think they say, based on Lindy King, that Patrick is on land and Kramer just stands up out of the water and shoots him. Does that matter for purposes of your argument, whether he's on the shore or in the water still? Only if he gets into the blood on Kramer's uniform, then yes, it would make a difference. Could you elaborate on that? Lindy King says that when the game warden stood up there and sees him shooting, that there is blood on his... When she sees Kramer look at them, there's blood on his uniform because Cody Young blood. The other game warden says, is that your blood? And he says, no, it's not my blood. The bottom line is Kramer, and they're not going to say this happened, but the dispute is that Kramer shoots him, he's in the water, he falls over into the water and Kramer pulls him out of the water and that's when he gets the blood on him, which would be, to me, seem to be completely contrary to where he's shot on the land and just lays there then. Unless there are any other questions, I'd like to reserve my last... Dissipate the water as a deadly weapon point you're making. No, because they're standing right beside him and they can just go right back in. He's already done that to him once when he tried to handcuff him and take him into custody and there's nothing to say that that very same thing won't happen to him or even Cody Young would for that matter. All right, counsel, you can reserve the rest of your time. Let's hear from Mr. Bryan. Thank you, Your Honors, and may it please the Court. My name is Spencer Bryan and I'm here representing the estate of Billy Patrick. The question in this case concerns a variety of disputed facts, but ultimately turns on whether Jared Kramer was presented with a substantial or serious threat of imminent death or serious bodily injury at the time he fired on Mr. Patrick. The district court, in reviewing the various factual and evidentiary information on that question, determined that the facts were in inexorable dispute. The two primary disputes in this case concern proximity and threat, and I'm going to address both of those for the Court. First, proximity. How close was Jared Kramer and Billy Patrick at the time the shooting happened? And, of course, the time the shooting happened is the dispositive moment. That's Thomas versus Girosanti. We have to determine at the moment the shot was fired, what was the threat that was present. And in this particular case, you have three eyewitnesses. You have Lindy King, you've got Jared Kramer, and you've got Carl Locke. And none of them will tell you the same story. All three of them come to the trial or come to the court with a different version of the facts. Jared Kramer says that Billy Patrick was... Well, instead of doing a compare and contrast, give me the facts that are best for you, because that's what I'm going to look at in trying to resolve the question presented here. Certainly. You don't want to give me the facts that are good for him, do you? The best facts for us would be not only the testimony of Lindy King, but also the forensic evidence from the medical examiner's report and the expert pathologist, Dr. Sibley. You're starting with proximity. Just tell me the best testimony facts for you on proximity. Proximity would be, Jared Kramer says that he was, and Carl Locke, say that this shooting occurred within a matter of arm's length. So a matter of one or two feet. So you're agreeing with that? That is the worst. I disagree with that, because Lindy King, the evidence that's best for us, says that Jared Kramer was standing up, he was out of the water, she was observing what was happening, and Billy Patrick was not even in her line of sight. He was off to the side, back, concealed by a pickup truck that they had been driving down to the pond. And so when you look at Lindy King's testimony. Do you happen to know the page of that statement? Your Honor, I apologize. I don't have it directly with me in the order. I don't want to take up your time. Maybe you can get it to me as we're finishing up. Your response seemed to me to go to the question of her credibility. But that's not an issue. We have to assume her credibility. What I would like to know is what did she say specifically, in terms of feet, inches, whatever, about the distance between the two of them at the time of the shooting? She was unable to estimate the distance. Okay. So what do you have that will tell us what the best evidence is for your case about the distance? Which would have to be what works best for you is the greatest distance. What is that evidence? The best evidence is that he was in the water. Kramer was in the water. Patrick was not in the water. Those two factors. We don't have that in feet and inches because they could be in the water and within a distance to slug. One could be in the water and the other on the bank and still be close enough to kick or slug somebody. When you look at her... What do we have for distance here? Unfortunately, none of the witnesses give a good distance. And when specifically asked of Jared Kramer, was that distance measured by OSBI, the investigating agency, he said no, it wasn't. And so the best distance estimate that we have would come from Lindy King in saying that I observed Jared Kramer in the water and then as you look to her right and as you pan the field of vision, there is water, there is grass, and then there is a truck. And behind that truck would be where Billy Patrick would have been on the ground. So you're talking dozens of yards, aren't you? I don't know that it would be dozens of yards, but I would think a fair estimate would be somewhere between 15 and 20 feet. But you don't have any testimony to quantify that. That's your estimate. That would be my estimate, and I know that my estimate is certainly not evidence. The testimony of Lindy King and what she observed and where Jared Kramer was located in the water, then being able to see water in front of him, land, and then a pickup truck is as good as we're going to get in terms of proximity. He was behind the pickup truck? Correct. How did he shoot him? Oh, I apologize, Your Honor. Patrick was behind the pickup truck. His location was concealed by the pickup truck, and she testified that had he been standing, that she would have been able to see his head over the top of it, and so she assumed that he was on the ground. There was a forensic report, wasn't there? Why is there any question about where the body was? Because OSBI never did an investigation to determine what the distance was, unfortunately. Setting aside what the distance is, where was the body? The body was discovered laying on the shore, on the bank of the... How did he get from behind the truck to on the shore? Well, the truck was between Lindy King and Patrick, so she can't see through the truck, but he's down there. That's going to a question of her credibility, not to the question of the distance, but apparently from what you're saying, he was lying on the bank when he was shot. Yes, Your Honor. And that's the bank, and the officer is in the water next to the bank. That is correct. Okay, that's your best case. That's our best case, and supporting that also would be the forensic evidence that shows that there was no stippling on the body and that the penetrating gunshot wounds entered from the side. Jared Kramer testified that Billy Patrick was advancing towards him, which would be forensically not possible, given the entry wounds and the direction, the bullet trajectories on Mr. Patrick's body, in addition to the absence of any stippling and there's no gunshot residue that was ever tested for on his shirt. So it seems like Mr. Locke may have been the only person who tried to describe the proximity of Mr. Patrick and the officer when the shooting occurred, and he said that Billy was kind of grabbing at him or whatever, and he pulled the pistol and shot him. I mean, that suggests really close, and then there's another one that says, so how far was Jared from Billy when he shot? He said, oh, inches. They was together, chest to chest. I mean, that seems to be the only evidence in the record of how close they were. Well, that particular testimony would be directly refuted by Lindy King and what she's testified to. She testified that Billy Patrick was nowhere near Jared Kramer at the time he fired the shot, and that's consistent with the forensic evidence from the medical examiner that showed there's no stippling on the body, which if you are within a matter of inches at the time you shoot somebody, there's going to be deformities on the body that show the proximity of the gunshot wound. So Lindy King's testimony is actually supported by the forensic evidence that was developed by the medical examiner. In addition to the forensic pathologist who is the expert that said the trajectory and the way that the bullets entered the body is inconsistent with somebody who is advancing on another person. Right. But Ms. King also testified that her view, at least to some degree, was blocked. That is correct, Judge. Okay. Is it true that she said she could not see the victim of the shooting at the time she heard the shots? Yes, Judge. She couldn't see him. So we have to draw inferences about distance and so on. Without direct testimony, we have to infer something. Yes, Your Honor. The inference from that would be that Mr. Patrick's body was situated at some distance away from Mr. Kramer at the time he fired the shots. If he was on the ground and she couldn't see him, looking at her testimony, I don't see where she's saying that he was some distance away, only that she couldn't see him and that the body was there on the bank after the shooting. Yes, Your Honor. She also did describe that there was, in the space that she was able to see between where Mr. Kramer was and where the pickup truck was, there was a gap there where it was not filled by Mr. Patrick. It was filled by grass and water. That's what she observed. And so inferring from that, Mr. Patrick was not in the water. He was not on that grassy part that she could see, but he was obscured somewhere behind that truck laying on the pond bank. Let's accept all that and let's say Mr. Patrick was a dozen feet away. I mean, could we get to a dozen feet under your scenario? I think that's a fair characterization. Even though the body was on the bank? I believe that's a fair characterization, yes. Even if that's the most reasonable interpretation of the record, why couldn't Mr. Patrick still be perceived by a reasonable officer as a threat to his safety or to the other officer or witnesses? Mr. Patrick, at that point, had used, allegedly, according to Mr. Kramer, water as the deadly weapon. He didn't have a gun. He didn't have a knife. And he's laying on the pond bank. So before he could engage Mr. Kramer again to use this deadly weapon, he would need to get up off the pond bank and then come back at Jared Kramer. He'd done it once. He tackled him once and drove him into the water. Why couldn't he do it again? The orientation of where this particular pond bank was, was down closer. And it was not on this high, grassy knoll where they rolled down into it. And at that point, they were both standing. And at this point, Mr. Kramer is standing. Mr. Patrick is sitting. And at that point, if Mr. Kramer perceives a threat, he had time and opportunity to, at the very least, give a warning. There was both Mr. Locke and, I believe— He'd already been attacked once. Sure. And that's correct. However, under Thomas v. Durasanti, it is the point when deadly force is used is the operative moment. That is the time at which you have to evaluate whether or not it was reasonable to use the force. And in that particular moment— Warning's not possible in every situation. Agreed. Some cases also say that. We had one just last year that makes that point. Polly v. White also talks about that's a fact question. And I believe Polly also cited an out-of-circuit case for that proposition. All of that to say that this case is a poor candidate for interlocutory appeal because of the myriad fact questions, I believe, that we've all identified here. Did you argue to the district court that there was time for a warning? I don't recall if that—I don't recall, to be honest with you, Judge. I apologize. Accepting the facts in light most favorable to your client, what's your best-case scenario as to the number of times that the officer went underwater? One time. Okay. And that was when the knee was on the chest and he was pushed under. It would have been—based on Lindy King's observation, they had rolled in and Patrick had pushed on Kramer to get off of him and get out of the water, and that caused Kramer to go under. It was not a sustained, I'm holding you under the water scenario. Okay. But can we take her testimony as definitive, even for you, in light of her comments that she wasn't sure she saw everything? I believe that it is as good as all of the other testimony that's in the record. Okay. If the panel has no further questions, I would again re-urge the Court to dismiss this case based on lack of jurisdiction. Thank you, Counsel. That was helpful. Rebuttal from Mr. Mann. Yes, Your Honor. Lindy King also said that Karlock had the better view. My recollection is the record, Ms. King says she didn't see them in the water. If you listen to that video reenactment that he's attached, she says, I think what happened was he pushed him. But nevertheless, giving them their due for purposes of this appeal and not disputing them on the facts, except for one thing, he's relying on his forensic evidence from his expert, which is, again, nothing more than an opinion. He doesn't get that shooting at a distance or there's no stippling on the body from the medical examiner's report or that there's any distance engaged in the 12 to 15 feet. And I don't think that's consistent with what Ms. King says either. Counsel estimated at the district court that this was a baptism. That context is all wrong. Jared Kramer is not approaching a minister for baptism. It's not a dunking like at a beach party. This is where he is pursuing a fleeing felon who ends up on top of him in water. It was reasonable for Kramer to fear for his life. The district court said there was a question of fact. I would, in closing, suggest that the Casella v. Hughes case out of the United States Supreme Court of April 2, 2018, says that the district court should not adhere just to Garner and Graham, and a quote, where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. I appreciate your time has expired. I think we understand the arguments. They were well stated. The case shall be submitted and counsel are excused.